**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

JOSE L. INIGUEZ ARECHIGA, #Y66172,  )
                                    )
            **Plaintiff,**           )
                                    )
    vs.                             )        **Case No. 26-cv-00206-SMY**
                                    )
LATOYA HUGHES,                      )
JEFF WEHKING,                       )
WEXFORD HEALTH SOURCES, INC.,       )
CENTURION,                          )
DR. WHEALON,                        )
JOHN/JANE DOES 1,                   )
and JOHN/JANE DOES 2,               )
                                    )
            **Defendants.**          )

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Jose L. Iniguez Arechiga, an inmate in the custody of the Illinois Department of Corrections (IDOC), filed this action pursuant to 42 U.S.C. § 1983 for constitutional deprivations stemming from the alleged denial of medical care at Centralia Correctional Center for facial, nasal, and eye injuries that he suffered during an assault at Macon County Jail.  (Doc. 1).  He seeks declaratory, monetary, and injunctive relief.  *Id*. at 13.  The Complaint is subject to review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *See id*.

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 7-11): Plaintiff was assaulted at Macon County Jail on September 26, 2024.  *Id*. at 7.  He sustained serious injuries and nerve damage to his left eye socket and nasal cavity and received emergency medical care at the

1

jail and a referral to a specialist. Before seeing the specialist, Plaintiff transferred into IDOC custody.

Plaintiff was initially housed at Graham Correctional Center. While there, he was sent to a specialist in St. Louis, Missouri, on October 15, 2025. The specialist recommended corrective surgery. Graham placed no medical hold on Plaintiff, and he transferred to Centralia Correctional Center before undergoing surgery. *Id*.

At Centralia, Plaintiff was seen by unknown medical staff on January 29, 2025. *Id*. at 8. He learned that his medical referral request would need to be re-processed at his new facility. In the meantime, his nose healed improperly and obstructed his breathing. Plaintiff also suffered from headaches, dizziness, blurry vision, foggy vision, blue-tinted vision, pain, watery eyes, mucus buildup, light sensitivity, and sleeplessness. *Id*. at 7-8.

Plaintiff does not speak English and requires an interpreter to communicate effectively. *Id*. at 7. When Plaintiff met with medical staff, an interpreter was often unavailable and Plaintiff had to rely on other inmates to help him communicate. *Id*. at 7-8.

Plaintiff met with several nurses and Dr. Whealon. He was given Tylenol and eyedrops, which did not help. When Plaintiff informed his medical providers that the treatment was ineffective, his complaints fell on deaf ears. As the facility's medical director and physician, Dr. Whealon was responsible for all aspects of inmate medical care, including referrals and scheduling. Dr. Whealon continued with the same course of treatment and offered no other options. Each time that Plaintiff asked about his referral for surgery, Dr. Whealon said, "[I]t is being processed." *Id*. at 8. Plaintiff was never sent for corrective surgery. *Id*. at 7.

Dr. Whealon also denied Plaintiff's request for tinted lenses. *Id*. at 9-10. Dr. Whealon explained that he could not prescribe them; only an eye doctor could do so under very limited

circumstances.  *Id*. at 9.  Sunglasses were not available for purchase.  As a result, Plaintiff had to avoid reading and outdoor activities (*e.g.*, jobs, recreation, and yard).  *Id*. at 11.  He blames this deprivation on a policy that effectively banned tinted lenses or the absence of a policy governing this issue by IDOC, Wexford, and/or Centurion.  *Id*. at 9-10.

IDOC is responsible for ensuring that inmates in their custody receive adequate medical care.  *Id*. at 8-9.  Director Hughes had the authority to contract with third parties to provide inmate medical care and also oversaw IDOC's inmate grievance process.

IDOC contracted with two different private medical corporations; Wexford and Centurion. Along with IDOC, Wexford and Centurion were responsible for promulgating directives, guidelines, and procedures governing inmate medical care.  Wexford and Centurion were also responsible for training staff to carry out these policies when treating inmates.  When Centurion replaced Wexford in July 2025, inmates with pending requests for referrals or outside appointments had to resubmit them to Utilization Management.  *Id*. at 10.  This caused treatment delays that unnecessarily prolonged Plaintiff's pain and symptoms.  *Id*.

Plaintiff filed three grievances to address these issues, including at least one that was deemed an emergency.  *Id*. at 8, 11. All three were still pending when Plaintiff filed this lawsuit. Wexford and Centurion, through an unknown employee, strategically stopped or delayed responses to inmate grievances as a "business strategy" to thwart litigation.  *Id*. at 9-10.  Following the transition from Wexford to Centurion, Health Care Unit Administrator (HCUA) Vinyard informed Plaintiff that Wexford simply stopped responding to grievances.  HCUA Vinyard wrote approximately fifteen noncompliance complaints against Wexford, but Warden Wehking only submitted three of them.  *Id*.

**Preliminary Dismissals**

HCUA Vinyard is mentioned in the statement of claim, but is not listed as a defendant in the Complaint. Therefore, all claims against HCUA Vinyard are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (title of the complaint "must name all the parties").

John/Jane Does 1 (Utilization Management Practitioners) and John/Jane Does 2 (Medical Defendants) are identified as defendants. A plaintiff may use "John/Jane Doe" designations when he does not know the names of specific individual defendants. However, making blanket allegations against a group without offering any context necessary to identify each person involved, such as the date, time, or description of individuals and their illegal acts, violates pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."); *See also Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (the phrase "one or more of the Defendants" failed to adequately plead personal involvement because it did not connect specific defendants to illegal acts). Therefore, John/Jane Does 1 and 2 will be dismissed without prejudice.

**Discussion**

Based on the allegations, the Court designates the following claims in the *pro se* Complaint:

**Count 1:**     Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's facial, nasal, and eye injuries and his related symptoms of pain, headaches, vision issues, and sleeplessness at Centralia.

**Count 2:**     Eighth Amendment deliberate indifference claim against Defendants for implementing policies, customs, or practices that caused a delay or denial of Plaintiff's medical care for facial, nasal, and eye injuries at Centralia.

**Count 3:**     Illinois negligence claim against Defendants.

**Count 4:**     Illinois NIED, IIED, and/or RIED claim against Defendants.

(Doc. 1, p. 3).  Any other claim mentioned but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.

## Count 1

An Eighth Amendment claim for the denial of medical care requires a plaintiff to allege: (1) an objectively serious medical condition; and (2) deliberate indifference to that condition by each defendant.  *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-58 (7th Cir. 2020). An objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one where the need for treatment would be obvious to a lay person.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Deliberate indifference occurs when a defendant knows about and disregards an excessive risk to inmate health.  *Id*.

Plaintiff sufficiently alleges an objectively serious medical condition.  He describes an injury to his left eye, eye socket, and nasal cavity that resulted in a doctor's recommendation for corrective surgery. He also alleges that without corrective surgery, he suffered from headaches, pain, vision issues, and sleeplessness.  *See, e.g., Jackson v. Peters*, App. No. 22-2514, 2023 WL 3151110 (7th Cir. 2023) (chronic headaches); *Donald*, 982 F.3d at 457-58 (eye affliction requiring surgery); *Ortiz v. Webster*, 655 F.3d 731, 734 (7th Cir. 2011) (pterygia causing vision distortions and necessitating corrective surgery); *Castillo v. United States*, 44 Fed. Appx. 732 (7th Cir. 2002) (unpublished) (right eye damage necessitating eyeball removal).

Plaintiff also describes deliberate indifference by Dr. Whealon.  As Centralia's physician and medical director, Dr. Whealon was allegedly in charge of inmate medical care, scheduling, and referrals.  Plaintiff claims he transferred to Centralia with a doctor's recommendation for surgery.  He also alleges that he followed up with the Dr. Whealon about it repeatedly, and each time, Dr. Whealon told him the request was "being processed," but Plaintiff was never sent for

5

surgery.  According to Plaintiff, Dr. Whealon treated his symptoms with eyedrops and Tylenol, even after learning the treatment was ineffective.  *See Machicote v. Roethlisberger*, 969 F.3d 822 (7th Cir. 2020) (persisting in course of treatment known to be ineffective while ignoring complaints of excruciating pain and discomfort constitutes deliberate indifference).

However, Dr. Whealon's denial of Plaintiff's request for tinted lenses does not amount to deliberate indifference.  When Plaintiff requested them, Dr. Whealon explained he was not authorized to prescribe them – an eye doctor must do so.  Plaintiff does not allege that he ever requested an appointment with an eye doctor or that Dr. Whealon denied this request. Plaintiff's disagreement with Dr. Whealon about a treatment decision or about the scope of his authority to make that decision, cannot support a claim for deliberate indifference.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (disagreement with medical professionals does not state cognizable Eighth Amendment claim under *Estelle* standard).

Because Plaintiff seeks injunctive relief in connection with Count 1, Warden Jeff Wehking will remain named as a defendant in an official capacity to implement any injunctive relief ordered herein.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).  However, the individual capacity claim against the warden will be dismissed because Plaintiff does not claim he was involved in any medical decisions or received any requests for treatment from Plaintiff.  Therefore, Count 1 cannot proceed against the warden.

Count 1 will also be dismissed against all other defendants including IDOC Director Hughes, Wexford, and Centurion.

## Count 2

Plaintiff alleges IDOC Director Hughes, Wexford, and Centurion caused the delay or denial of medical care through implementation of various policies and procedures.  He seeks

money damages and/or injunctive relief. This claim does not survive review under § 1915A for several reasons.

The Complaint vaguely alludes to several policies or procedures without identifying a particular policy or explaining how it actually violated Plaintiff's rights. These vague allegations violate the applicable pleading standards and provide independent grounds for dismissal of Count 2. *See* FED. R. CIV. P. 8 (complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief").

Additionally, Plaintiff cannot obtain money damages against IDOC Director Hughes for acting in her official capacity as such claims are barred by the Eleventh Amendment. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Nor can Plaintiff obtain relief against Wexford and/or Centurion unless he can show they were responsible for a policy, custom, or practice that caused a violation of his constitutional rights. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782,786 (7th Cir. 2014) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978)).

Plaintiff's Complaint mentions three policies, procedures, or practices. He first takes issue with the tinted lenses policy, or absence thereof, that allegedly resulted in the denial of his request for tinted eyewear. Because the related claim against the individual defendants in Count 1 does not survive screening, his policy claim likewise fails. *See Donald*, 982 F.3d at 463 (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (where a plaintiff's theory of *Monell* liability rests entirely on individual liability, [then] negating individual liability will automatically preclude a finding of *Monell* liability)).

Moreover, Plaintiff does not claim the *absence* of a policy violated his constitutional rights. He alleges Dr. Whealon denied his request for tinted lenses because an eye doctor was required to

approve them and could do so under some circumstances.  This suggests the *existence* of a policy and that tinted lenses were available to certain individuals.  According to the Complaint, Plaintiff did not ask to see an eye doctor to discuss his eligibility for tinted lenses under the policy.  Thus, there is no claim that any policy caused his deprivation.

Plaintiff also alludes to the transition in corporate medical providers from Wexford to Centurion and suggests that it caused a delay in surgery.  He alleges that referrals and scheduling requests were re-processed through "Utilization Management" but does not explain how re-processing his surgical referral request caused a delay or how it was tied to a broader policy, procedure, or widespread practice of either provider.  Plaintiff's claims against John/Jane Does 1 (Utilization Management Practitioners) do not survive screening, and neither does this claim.  *Id.*

Finally, Plaintiff claims that Wexford and Centurion had a "business strategy" of delaying grievance responses to thwart litigation.  He cites his three grievances that were still pending when he filed suit, without providing details about when, where, and with whom he filed each one.  He also mentions several noncompliance complaints against Wexford that the HCU Administrator gave the warden.  It is not clear that Wexford or Centurion received any notice of his grievances or the noncompliance complaints.  Regardless, these isolated examples of alleged delay do not establish a policy, custom, or widespread practice.  Therefore, Count 2 will be dismissed without prejudice for failure to state a colorable claim.

### Counts 3 and 4

Plaintiff asserts a negligence claim (Count 3) and emotional distress claim (Count 4) against Defendants under Illinois law.  The Court may exercise supplemental jurisdiction over state law claims when the state claims "are so related to [the federal claims] that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C.

§ 1367(a). Although the Court will exercise supplemental jurisdiction over both claims, neither survives screening.

Beyond listing "negligence" and "IIED/NIED/RIED," Plaintiff makes no allegations in support of the claims. Even at this early stage, a list of claims and conclusory recitals of a cause of action are not enough. *See Ashcroft v. Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555) ("The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). Counts 3 and 4 will therefore be dismissed without prejudice.

### PLRA Exhaustion

Plaintiff is required to exhaust all available administrative remedies before filing suit under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The Complaint suggests he failed to exhaust his remedies before filing this lawsuit; Plaintiff refers to three grievances that were still pending on the date he file the Complaint.

Under the PLRA, a plaintiff cannot sue first and exhaust his administrative remedies later. Thus, if the Court finds that Plaintiff failed to exhaust his available administrative remedies, this case must be dismissed without prejudice to re-filing after Plaintiff completes the exhaustion process. The Court generally makes this finding on summary judgment, and Plaintiff may not have time to exhaust and re-file his lawsuit within the applicable 2-year statute of limitations. Therefore, Plaintiff should consider whether he exhausted his available remedies in compliance with the PLRA before commencing this action. If not, he may file a motion to voluntarily dismiss this case and re-file this lawsuit after exhausting his remedies.

### Motions for Preliminary Injunction

Plaintiff requests preliminary injunctive relief in the Complaint (Doc. 1, p. 13). He also filed two motions for a preliminary injunction (Docs. 5 and 6). In the first motion, Plaintiff seeks

a referral for surgery.  (Doc. 5).  Defendants must respond to this motion within fourteen (14) days of appearing in this case.  The Court **DEFERS** a decision on the motion until after this response is filed.

In the second motion, Plaintiff requests a copy of the tinted lenses policy.  (Doc. 6). Because no claim survived screening on this issue, this motion is **DENIED.**

## Disposition

The Complaint (Doc. 1) survives screening pursuant to 28 U.S.C. § 1915A.  With the exception of the tinted lenses portion of the claim, **COUNT 1** will proceed against **DR. WHEALON**, in an individual capacity, and **JEFF WEHKING**, in an official capacity.  However, **COUNTS 1 (tinted lenses),  2, 3,** and **4** are **DISMISSED** without prejudice for failure to state a claim.   Defendants **LATOYA HUGHES, WEXFORD HEALTH SOURCES, INC., CENTURION,** and **JOHN/JANE DOES 1 and 2** are **DISMISSED** without prejudice.

**Defendant Whealon is ORDERED to file a written Response to the Motion for Preliminary Injunction (Doc. 5) within fourteen (14) days of filing a Notice of Appearance.**

With regard to **COUNT 1**, the Clerk shall prepare for **WARDEN JEFF WEHKING (official capacity only)** and **DR. WHEALON (individual capacity)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of

formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Under SDIL-LR 8.2, Defendant Whealon need only respond to the issues in this Merit Review Order**.  **Warden Wehking (official capacity defendant) need only appear in this matter and need not answer.**

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to TERMINATE JOHN/JANE DOES 1 AND 2, LATOYA HUGHES, WEXFORD HEALTH SOURCES, INC., and CENTURION as defendants in CM/ECF and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

DATED:    April 24, 2026                                *s/ Staci M. Yandle*
                                                                  **STACI M. YANDLE**
                                                                  **Chief U.S. District Judge**

11

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.